IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

GLORYMIR GONZALEZ-CARATINI,

    Plaintiff,

    v.

JUAN CARLOS GARCIA-PADILLA, et al.,

    Defendants.

CIVIL NO. 02-1016 (RLA)

**ORDER DISMISSING THE COMPLAINT**

    Codefendants the Municipality of Coamo and its Mayor, JUAN CARLOS GARCIA-PADILLA in his individual capacity, have moved the court to enter summary judgment in this political discrimination action in their favor and to dismiss the complaint.

    The court having reviewed the extensive memoranda and documentation filed by the parties hereby finds that summary judgment is warranted in that given the nature of plaintiff's position it was subject to political patronage.

**PROCEDURAL BACKGROUND**

    Plaintiff filed the instant suit seeking both equitable and compensatory relief for alleged violations to her freedom of speech, freedom of association and due process guaranteed by the First and Fourteenth Amendments to the Constitution of the United States.

According to plaintiff her termination from the position of ASCIFAL's[1] Coamo Local Services Office Director was due to her affiliation with the New Progressive Party ("NPP"). Plaintiff charges the Coamo Mayor, a member of the opposing Popular Democratic Party ("PPD"), of prompting her dismissal.

The complaint named the Mayor, the Municipality as well as MARTA ORTIZ, an employee of ASCIFAL, as defendants. The reinstatement[2] and due process[3] claims as well as the claims asserted against MARTA ORTIZ[4] have been previously dismissed.

The remaining defendants have moved for summary judgment on various legal grounds. It appearing, however, that plaintiff's position at the time of her discharge was one for which political affiliation was properly required we shall only address this particular issue.

**RELEVANT FACTS**

ASCIFAL is a South-Central Consortium,[5] whereby various municipalities group together to establish a non-profit partnership

---

[1] ASCIFAL is a consortium or partnership comprised of various municipalities located in Puerto Rico's South-Central region.

[2] *See*, Amended Order in the Matter of Defendants' Motion to Dismiss filed on August 28, 2003 (docket No. 31).

[3] *See*, Partial Judgment filed on October 1, 2002 (docket No. 39).

[4] *See*, Partial Judgment filed on February 20, 2004 (docket No. 52).

[5] ASCIFAL is the acronym in Spanish for "Area Sur Central para la Inversión en la Fuerza Laboral".

**CIVIL NO. 02-1016 (RLA)**                                                    **Page 3**

for the purpose of providing employment opportunities and vocational training in their respective municipalities.[6]

ASCIFAL is funded exclusively with monies provided by the Workforce Investment Act of 1998 ("WIA")[7] 29 U.S.C. §§ 2801-2945.

WIA's purpose "is to provide workforce investment systems, that increase the employment, retention, and earnings of participants, and increase occupational skill attainment by participants, and, as a result, improve the quality of the workforce, [and] reduce welfare dependency...." 29 U.S.C. § 2811.

Consortiums established under WIA provide a wide range of comprehensive workforce development activities in their respective communities with the federal funds received.

Pursuant to 29 U.S.C. § 2841 "one stop delivery systems" may be established as part of WIA programs whereby the services provided in accordance with the statute are made available to participants in a single location.

The Coamo Local Services Office functions as a one-stop delivery system. There is one such center operating in each municipality within the geographical area served by the Consortium and a central administrative office located in the town of Salinas.

---

[6] The municipalities comprising ASCIFAL are: Salinas, Juana Díaz, Coamo, Naranjito, Barranquitas and Santa Isabel.

[7] WIA superseded the Job Training Partnership Act.

**CIVIL NO. 02-1016 (RLA)**                                                                 **Page 4**

Plaintiff was appointed Coordinator of ASCIFAL's Coamo Local Services Office in December 1999 upon being recommended by MARGARITA NOLASCO, former Coamo Mayor.

Pursuant to a study of the position's duties and responsibilities conducted by ASCIFAL the Coordinator position was reclassified in June 2000 as Director in accordance with the corresponding Classification and Retribution Plan.

Both the Coordinator and the Director positions were classified as "trust" positions.

ASCIFAL's Personnel Regulations and its Classification and Compensation Plan for Personnel in the Trust Service define trust personnel as those positions which establish policy, require the personal trust of the head of the agency and are of free removal.

Pursuant to ASCIFAL's Personnel Regulations, the Executive Director is the nominating authority within the Consortium, which authority may be delegated.

The Executive Director of ASCIFAL and its Board of Mayors (comprised of the Mayors of the six member-municipalities) handle the policy decisions of the Consortium.

Plaintiff was discharged as Local Director in January 2001. According to her termination letter the decision was based on the fact that she occupied a position of trust.

**CIVIL NO. 02-1016 (RLA)**                                              **Page 5**

## SUMMARY JUDGMENT

Rule 56(c) Fed. R. Civ. P., which sets forth the standard for ruling on summary judgment motions, in pertinent part provides that they shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Sands v. Ridefilm Corp., 212 F.3d 657, 660-61 (1st Cir. 2000); Barreto-Rivera v. Medina-Vargas, 168 F.3d 42, 45 (1st Cir. 1999). The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997). A genuine issue exists if there is sufficient evidence supporting the claimed factual disputes to require a trial. Morris v. Gov't Dev. Bank of Puerto Rico, 27 F.3d 746, 748 (1st Cir. 1994); LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993), *cert. denied*, 511 U.S. 1018, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994). A fact is material if it might affect the outcome of a lawsuit under the governing law. Morrissey v. Boston Five Cents Sav. Bank, 54 F.3d 27, 31 (1st Cir. 1995).

"In ruling on a motion for summary judgment, the court must view 'the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor.'" Poulis-

**CIVIL NO. 02-1016 (RLA)**                                                    **Page 6**

Minott v. Smith, 388 F.3d 354, 361 (1st Cir. 2004) (citing Barbour v. Dynamics Research Corp., 63 F.3d 32, 36 (1st Cir. 1995)).

Credibility issues fall outside the scope of summary judgment. "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). *See also*, Dominguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 432 (1st Cir. 2000) ("court should not engage in credibility assessments."); Simas v. First Citizens' Fed. Credit Union, 170 F.3d 37, 49 (1st Cir. 1999) ("credibility determinations are for the factfinder at trial, not for the court at summary judgment."); Perez-Trujillo v. Volvo Car Corp., 137 F.3d 50, 54 (1st Cir. 1998) (credibility issues not proper on summary judgment); Molina Quintero v. Caribe G.E. Power Breakers, Inc., 234 F.Supp.2d 108, 113 (D.P.R. 2002). "There is no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, and no room for the judge to superimpose his own ideas of probability and likelihood. In fact, only if the record, viewed in this manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." Cruz-Baez v.

**CIVIL NO. 02-1016 (RLA)**                                                          **Page 7**

Negron-Irizarry, 360 F.Supp.2d 326, 332 (D.P.R. 2005) (citations and internal quotation marks omitted).

In cases where the non-movant party bears the ultimate burden of proof, he must present definite and competent evidence to rebut a motion for summary judgment, Anderson v. Liberty Lobby, Inc., 477 U.S. at 256-257, 106 S.Ct. 2505, 91 L.Ed.2d 202; Navarro v. Pfizer Corp., 261 F.3d 90, 94 (1st Cir. 2000); Grant's Dairy v. Comm'r of Maine Dep't of Agric., 232 F.3d 8, 14 (1st Cir. 2000), and cannot rely upon "conclusory allegations, improbable inferences, and unsupported speculation". Lopez-Carrasquillo v. Rubianes, 230 F.3d 409, 412 (1st Cir. 2000); Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994); Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

### PLAINTIFF'S EMPLOYMENT POSITION

Political discrimination in employment is conduct proscribed by the First Amendment. "It is now well established that political patronage restrains freedom of belief and association, core activities protected by the First Amendment." Padilla-Garcia v. Guillermo Rodriguez, 212 F.3d 69, 74 (1st Cir. 2000).

In order to determine whether or not plaintiff was the victim of objectionable political patronage on a motion for summary judgment scenario we must follow the Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) route which places the initial burden upon plaintiff who must present

sufficient evidence to establish that "party affiliation was a substantial or motivating factor behind the adverse employment action." Ruiz-Casillas v. Camacho-Morales, 415 F.3d 127, 131 (1st Cir. 2005). *See also*, Cepero-Rivera v. Fagundo, 414 F.3d 124, 132 (1st Cir. 2005) (political discrimination suits subject to the burden-shifting analysis developed after *Mt. Healthy*); Mercado-Alicea v. P.R. Tourism Co., 396 F.3d 46, 51-52 (1st Cir. 2005) (plaintiff must produce sufficient evidence for a reasonable fact finder to infer that her political affiliation was a substantial or motivating factor behind the employment practice in controversy); Gomez v. Rivera Rodriguez, 344 F.3d 103, 110 (1st Cir. 2003) ("political affiliation was a substantial or motivating factor in the decisional calculus."); Figueroa-Serrano v. Ramos-Alverio, 221 F.3d 1, 7 (1st Cir. 2000) (constitutionally protected conduct substantial factor in the decision).

For purposes of the outstanding motion we shall assume that plaintiff complied with the prima facie burden of proving that her affiliation to the NPP was the reason behind her termination as ASCIFAL's Coamo Local Director.[8]

---

[8] We do not intimate by today's ruling that either the Mayor or the Municipality are proper party defendants to this action.

**CIVIL NO. 02-1016 (RLA)**                                                                **Page 9**

Hence, it now behooves defendants to present evidence[9] of either: (1) a nondiscriminatory motive for its decision or (2) that party affiliation was "an appropriate requirement for the effective performance of the public office involved." Branti v. Finkel, 445 U.S. 507, 518, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980). "Once plaintiffs establish a *prima facie* case, the burden then shifts to the defendant official to articulate a nondiscriminatory basis for the adverse employment action, and prove by a preponderance of the evidence that the adverse action would have been taken regardless of any discriminatory political motivation." Cepero-Rivera, 414 F.3d at 132 (citation and internal quotation marks omitted). "If the plaintiff satisfies this burden the devoir of persuasion shifts to the defendants to prove that they would have taken the same action regardless of plaintiff's political affiliation." Gomez v. Rivera Rodriguez, 344 F.3d at 110.  This is "commonly referred to as the *Mt. Healthy* defense."  Padilla-Garcia, 212 F.3d at 74.

---

[9] The probative onus placed on the parties in political discrimination cases differs from that required in employment discrimination suits brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"). In Title VII suits plaintiff retains the burden of persuasion throughout the litigation with defendant's duty limited to a proffer of non-discriminatory reasons. Thus, in Title VII discrimination cases, once plaintiff meets the threshold of prima facie discrimination "only a limited burden of production passes to the employer to articulate a legitimate, nondiscriminatory reason for its actions. The employer under Title VII need not submit sufficient evidence to persuade the factfinder because the plaintiff retains the burden of persuasion at all times." Padilla-Garcia, 212 F.3d at 78 (citations and internal quotation marks omitted). *See also*, Cepero-Rivera, 414 F.3d at 132 n.1.

**CIVIL NO. 02-1016 (RLA)**                                                              **Page 10**

In their motion defendants contend that political affiliation was an appropriate requirement for plaintiff's position. Hadfield v. McDonough, 407 F.3d 11, 16 (1st Cir. 2005); Golloza v. Foy, 389 F.3d 26, 28-29 (1st Cir. 2004). "Unlike non-policymaking career positions, 'political positions' are terminable without cause when political affiliation is an appropriate requirement for the position." Ruiz-Casillas, 415 F.3d at 131-32.

Thus, we must determine whether plaintiff's particular job was shielded from political bias or whether, on the other hand, she held a "policymaking position" or a "position of unusual confidence" which do allow for political affiliation as an appropriate consideration when making personnel-related decisions. Gomez v. Rivera Rodriguez, 344 F.3d at 110; Padilla-Garcia, 212 F.3d at 74. "Public employees who do not hold confidential policy-making positions are protected from adverse employment actions based on political affiliation." Figueroa-Serrano, 221 F.3d at 7. *See*, Duriex-Gauthier v. Lopez-Nieves, 274 F.3d 4, 11 (1st Cir. 2001) ("position is one in which political affiliation is a reasonably necessary requirement").

"In determining whether a position is 'political,' we engage in a two-step inquiry: (1) whether the governmental unit decides issues where there is room for political disagreement on goals or their implementation and (2) whether the position's responsibilities resemble those of a policymaker, a privy to confidential information, a communicator, or some other office holder whose function is such

**CIVIL NO. 02-1016 (RLA)**                                              **Page 11**

that party affiliation is an equally appropriate requirement." <u>Ruiz-Casillas</u>, 415 F.3d at 132 (citations and internal quotation marks omitted).

The courts have examined a series of factors in ascertaining whether or not a particular position conforms to the policymaking exception. "We have tended to ask (1) if the position deals with issues over which there can be partisan differences and (2) if the specific responsibilities of the position resemble those of a policymaker or other officeholder whose functions are such that party affiliation is an appropriate criterion for holding the post." <u>Hadfield</u>, 407 F.3d at 16.

"To differentiate between policymakers and non-policymakers, we assay a wide array of factors, including the relative compensation level for the position, the technical expertise (if any) required to do the job, the extent to which the position involves supervision and control over others, the degree to which the position confers authority to speak in the name of higher-ups who themselves are policymakers, the influence of the position over programs and policy initiatives, and the public perception of what the position entails. We also factor into the mix the relationship of the position to elected officials, party leaders, and partisan politics. Finally, consideration should ... be given to whether the employee acts as an adviser or formulates plans for the implementation of broad goals." <u>Golloza</u>, 389 F.3d at 29-30.

**CIVIL NO. 02-1016 (RLA)**                                                                 **Page 12**

"We have observed that the job description is the best, and sometimes dispositive, source for identifying the functions of the position." Hadfield, 407 F.3d at 17 n.3. "[I]f a formal job description exists, it is important for an inquiring court to look to the specifics of that document." Golloza, 389 F.3d at 30. *See also*, Ruiz-Casillas, 415 F.3d at 132 ("job position most useful starting point").

"We have recognized, however, that deciding whether a position is protected from political discharge is not a matter of inserting variables into a known equation. Rather, it requires a court to look closely at the position to identify its inherent duties and then to make a judgment about whether the position is one for which political affiliation is an appropriate requirement." Hadfield, 407 F.3d at 16 (citations and internal quotation marks omitted).

"Job descriptions that are broad and open ended – given the employee's latitude to exercise discretionary judgment – generally indicate a policymaking position, while job descriptions that are narrowly circumscribed inhibit freedom of action and generally indicate a non-policymaking position." Ruiz-Casillas, 415 F.3d at 132.

The position's title is not conclusory. The court should also take into consideration factors such as "'relative pay, technical competence, power to control others, authority to speak in the name of policymakers, public perception, influence on programs, contact

**CIVIL NO. 02-1016 (RLA)**                                                                 **Page 13**

with elected officials,... responsiveness to partisan politics and political leaders... [and] responsibilities that are not well defined or are of broad scope.'" *Id*. at 131-32 (citing <u>Jimenez Fuentes v. Torres Gaztambide</u>, 807 F.2d 236, 242 (1st Cir. 1986) (en banc).

"[T]he cases have regularly upheld against First Amendment challenge to dismissal on political grounds of mid-or upper-level officials or employees who are significantly connected to policymaking... [A]n employee is not immune from termination merely because the employee stands apart from partisan politics, is not the ultimate decisionmaker in the agency, or is guided in some responsibilities by technical or professional standards. It is enough that the official is involved in policy, if only as an adviser, implementer or spokesperson." <u>Hadfield</u>, 407 F.3d at 16 (citations and internal quotation marks omitted); <u>Golloza</u>, 389 F.3d at 30.

Lastly, the fact that a plaintiff's past work may have been limited to handling administrative matters and not involved in policy aspects of her position is not dispositive provided her "job description could be read to encompass participation in policymaking and political affairs, and [the defendant] in forming his new administration, could be frustrated by [an employee] whose view varied from the [mayor's]." <u>Hadfield</u> 407 F.3d at 18. *See also*, <u>Golloza</u>, 389 F.3d at 30 ("inquiry focuses not on what functions a particular occupant of the position may in fact carry out from time to time, but rather, on the essential attributes of the position

**CIVIL NO. 02-1016 (RLA)** **Page 14**

itself."); Ruiz-Casillas, 415 F.3d at 133 (even though plaintiff also performed certain clerical chores such as answering mail and phone calls "her overall job description accords more closely to a policymaking position.")

Plaintiff's job description[10] as Local Services Office Director in Coamo included the following duties.[11]

> Plan[s], coordinate[s], direct[s] and supervise[s] the activities of the Local Service Office. Work[s] under the administrative direction of the Executive Director. Exercise[s] a high degree of initiative and independent criteria in the development of his/her job. Receive[s] general instructions in the common aspects of the job, and specific instructions in special work situations.

The following appear as Work Examples in the Director's job description.[12]

---

[10] Codefendants' Motion for Leave to File Certified Translations (docket No. 68) Exh. H.

[11] Plaintiff claims that she was provided a copy of her job description as Coordinator but not the one corresponding to the Director position. However, during her deposition plaintiff specifically acknowledged that the duties appearing in the Director's position description reflected the duties she performed. Plaintiff's deposition Tr. 25. *See, i.e.*, Ruiz-Casillas, 415 F.3d at 133 (deposition testimony recites duties of written job description).

[12] Codefendants' Motion for Leave to File Certified Translations (docket No. 68) Exh. H.

**CIVIL NO. 02-1016 (RLA)**                                             Page 15

- Implements changes and develops the basic administrative and program guidelines to be used at the central level in the Local Service Office.
- Supervises and evaluates the staff of the Local Service Office.
- Orients applicants and service providers, obligated members and/or public or nonprofit agencies about the services and programs.
- Coordinates the establishment or development of projects by integrating programs with the community.
- Coordinates the services to be provided in different municipal and state agencies, and the private sector, and refers duly oriented clients to them.
- Collaborates with municipal agencies or the private sector in preparing the proposals.
- Writes proposals for different purposes.
- Visits projects and/or training activities and follows up on them.
- Represents the Executive Director or the First Municipal Executive in job-related activities.
- Attends conferences, seminars, training activities and meetings.
- Prepares reports and other job-related documents.
- Performs other related tasks that may be required.

**CIVIL NO. 02-1016 (RLA)**                                                                    **Page 16**

---

Plaintiff alleges that her position of Coamo Local Director of ASCIFAL was a low level supervisory position paying $1,543.00 per month with no public policy responsibility. She further argues that she has no authority over personnel matters and depended on Personnel Office authorization from the central administrative office. Plaintiff characterized her position as measured by "strictly technical or professional criteria".[13] She further stated that she did not report either to the Mayor or the ASCIFAL Executive Director but rather her instructions came from the Salinas Central Office Directors.[14] However, in her deposition plaintiff specifically indicated that she reported to ASCIFAL's Executive Director and to the Board of Mayors.[15]

Plaintiff further contends that because WIA funds are regulated by the federal government and the statute prohibits discrimination "political positions" are disallowed. This argument was specifically rejected in Caraballo-Seda v. Javier-Rivera, 306 F.Supp.2d 108, 111 (D.P.R. 2004) where the court held that "[i]t is evident that under WIA there is still ample room for the consortium to make decisions that may rely on public policy considerations affected by political affiliation."

---

[13] Plaintiff's Statement under Penalty of Perjury ¶ 6.

[14] *Id.* ¶ 9.

[15] Plaintiff's depo. Tr. 65.

**CIVIL NO. 02-1016 (RLA)**                                                                                    **Page 17**

Defendants, on the other hand, portray plaintiff's role under a different light.

The purpose of WIA funds is to promote employment. According to defendants policy decisions on how to use the WIA federal funds and programs to be sponsored rested on the Board of Mayors and each member Mayor in turn would vie for those funds to advance their own interests in their respective constituencies. They further claim that through the administration of those funds each mayor implements his/her own policy agenda. The decision on how those monies will be used and which particular programs will benefit from them within each city constitutes clear policy goals for each mayor. In sum, it is defendants' position that as Director of the Local Office plaintiff's role was inextricably intertwined with the mayor's political vision in order to advance the municipal's policy on how the WIA funds and resources would be expended in Coamo.

Because of the significant implications of the WIA funds in the municipal economy the operation of the Local Office is perforce of utmost importance to the mayor's policies. Thus, local directors are required to work closely with the corresponding mayor in implementing policies established by the mayor regarding the WIA funds.[16] According

---

[16] It is important to note that plaintiff herself was selected for the position upon the recommendation of MARGARITA NOLASCO, former Coamo Mayor, who attested to the fact that the ASCIFAL "mayors had the decisional power and would select the Director... of [their] municipality." NOLASCO specifically noted that it was "[t]he underwritten rule... that the Mayor designate[d] the Local Coordinator or Director." Statement under Penalty of Perjury ¶ 2.

to the job description Local Directors are responsible for developing programs and projects within their communities, coordinating services to be provided in different municipal and state agencies as well as private entities, writing proposals and collaborating with municipal agencies and the private sector in preparing the proposals. Further, as indicated in the position description Local Directors are authorized to represent the Executive Director or the First Municipal Executive in job-related activities.

"A new administration should not be overly hamstrung in filling key positions with loyal employees simply because of the way the prior administration operated... This is why the *Branti* analysis eschews reliance on 'what functions a particular occupant of the position may in fact carry out from time to time' in favor of focusing on 'the essential attributes of the position.'" Hadfield 407 F.3d at 18 (citing Golloza, 389 F.3d at 30).

"The First Amendment right to association includes a qualified right to be free from discharge from public employment merely because of political affiliation. But the right does not extend to all public employees... [T]he wholesale protection of public employees could undermine representative government by forcing those who win elective office to employ individuals who disagree with the prevailing candidate's (and presumably the electorate's) goals. To permit the prevailing candidate sufficient leeway to enact his or her programs, individuals in policymaking and confidential positions were held to

**CIVIL NO. 02-1016 (RLA)**                                              **Page 19**

be excluded from the prohibition against politically motivated discharges." Hadfield, 407 F.3d at 15-16 (citations omitted)."This rule ensures that 'representative government [will] not be undercut by tactics obstructing the implementation of policies of the new administration, policies presumably sanctioned by the electorate.'" Ruiz-Casillas, 415 F.3d at 132 (citing Elrod v. Burns, 427 U.S. 347, 362-63, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) (internal bracket in original).

Based on the foregoing, we find that given the nature of the duties corresponding to her position there is room for political disagreement between the mayor and the Local Director regarding policies affecting the use of WIA funds. Thus, plaintiff's position as ASCIFAL's Local Services Office Director in Coamo constitutes a "political position" for which political affiliation is an appropriate requirement.

Based on the foregoing, Defendants' Motion for Summary Judgment (docket No. **56**)[17] is **GRANTED** and the complaint filed in this case is hereby **DISMISSED.** Judgment shall be entered accordingly.

IT IS SO ORDERED.

San Juan, Puerto Rico, this 30th day of November, 2005.

                                                  S/Raymond L. Acosta
                                                  RAYMOND L. ACOSTA
                                          United States District Judge

---

[17] *See*, Plaintiff's Opposition (docket No. **76**); Defendants' Reply (docket No. **87**) and Plaintiff's Sur-Reply (docket No. **96**).